**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2017**

# In the Court of Appeals of Georgia

A17A0954. NEWSTROM et al. v. AUTO-OWNERS INSURANCE COMPANY.

MCFADDEN, Presiding Judge.

This appeal from summary judgment rulings in a declaratory judgment action presents a choice-of-law question — does Georgia or California law determine whether Jenna Newstrom, Cheryl Newstrom, and David Newstrom can pursue an uninsured/underinsured motorist (UM) claim against Owners Insurance Company[1] ("Owners") under a policy issued and delivered in Georgia for an accident that occurred in California and involved a car garaged and principally used in California. Because this is a procedural matter rather than a substantive matter, Georgia law

---

[1] Although Owners is identified as "Auto-Owners Insurance Company" in the style of this case below and on appeal, it states that its correct name is "Owners Insurance Company."

applies, and under Georgia law the Newstroms may not pursue their claim. So we affirm the trial court's grant of summary judgment to Owners and his denial of summary judgment to the Newstroms.

1. *Facts and procedural posture.*

"On appeal from the denial or grant of summary judgment, the appellate court must conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Landrum v. Infiniti Safeguard Ins. Co.*, 318 Ga. App. 701 (734 SE2d 520) (2012) (citation and punctuation omitted).

So viewed, the facts show that on September 27, 2013, 22-year-old Jenna Newstrom was injured in a car accident in California. At the time she was a California resident, but the car she was driving was registered in Georgia where her parents, Cheryl and David Newstrom, lived. That car was insured under the parents' policy with Owners ("the policy"), which was issued in Georgia and included UM coverage providing that Owners would "pay compensatory damages . . . any person is legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injury sustained by an injured person while occupying an automobile which

2

is covered by . . . the policy." The policy declarations page in effect at the time of the accident indicated that the car's "territory" was Hall County, Georgia and that it was "driven to work or school more than 3 miles but less than 15 miles by a 51 year old driver," apparently referring to Cheryl Newstrom. However, the car was purchased in California and used exclusively by Jenna Newstrom in California. (The Newstroms argue that the insurance agent who sold them the policy knew that the car was used by Jenna Newstrom in California. This fact is not material to our disposition of this appeal.)

After the accident, Jenna Newstrom settled her claims against the other driver for his insurance policy limits and signed a general release of her claims against him arising from the accident. She then made a claim for UM benefits from Owners and sent Owners a letter demanding binding underinsured motorist arbitration under California law. See Cal. Ins. Code § 11580.2 (f). Owners declined to participate in the arbitration.

The Newstroms then brought this declaratory judgment action in Georgia, seeking declarations that Owners must provide UM coverage under the policy for their claims and that Owners has a duty to participate in the California arbitration procedure. Owners counterclaimed, seeking declarations that Jenna Newstrom fully

3

released her claims against the other driver and that, consequently, none of the Newstroms are entitled to recovery under the UM policy. Both sides moved for summary judgment, and the trial court granted summary judgment to Owners and denied summary judgment to the Newstroms.

2. *Choice of law.*

The Newstroms argue that the outcome of this case depends on whether we apply Georgia or California law, because the two states have different rules regarding the effect of a general release to a tortfeasor on a claimant's ability to pursue UM benefits, and because California requires arbitration of disputes about UM coverage. In *Allstate Ins. Co. v. Duncan*, 218 Ga. App. 552 (462 SE2d 638) (1995), we addressed a choice-of-law issue in the context of an insurance policy that included UM coverage:

> When a choice-of-law question arises in a contract action brought in Georgia, substantive matters such as the validity and construction of the contract are governed by the substantive law of the state where the contract was made (or is to be performed, if that is a different state); but procedural and remedial matters are governed by the law of Georgia, the forum state.

4

Id. at 552 (1) (citation omitted). We held that the question in *Allstate Ins. Co.* —

"what a party injured by an unknown driver must do to recover from his own

uninsured motorist carrier" — was "a procedural and remedial matter, and thus [was]

governed by Georgia law." Id. at 552-553 (1) (citation omitted).

Applying this analysis, we conclude that Georgia law governs this case. The

parties are not disputing the nature, construction, or interpretation of the policy.

Instead, they are disputing (1) the effect of a general release on the Newstroms'

ability to recover UM benefits and (2) the method of resolving that dispute. These

questions concern what the Newstroms must do to recover from their own UM

carrier, Owners. So, as in *Allstate Ins. Co.*, this case involves procedural and remedial

matters governed by Georgia law, the law of the forum in which the Newstroms

brought this action. *Allstate Ins. Co.*, supra at 552-553 (1).

In support of their argument that we should apply California law, the

Newstroms cite *Amica Mut. Ins. Co. v. Bourgault*, 263 Ga. 157 (429 SE2d 908)

(1993), and *St. Paul Fire & Marine Ins. Co. v. Hughes*, 321 Ga. App. 738 (742 SE2d

762) (2013). These decisions are inapposite, because they concern substantive rather

than procedural issues. The question in *Amica Mut. Ins. Co.* was the validity of an

5

exclusion in a UM policy, 263 Ga. at 157, and the question in *St. Paul Fire & Marine Ins. Co.* was whether a policy provided UM coverage at all. 231 Ga. App. at 738.

3. *Summary judgment.*

Applying Georgia law, the trial court properly granted summary judgment to Owners and denied summary judgment to the Newstroms. In Georgia, a claimant who settles with a tortfeasor must execute a limited release pursuant to OCGA § 33-24-41.1 in order to preserve the claimant's pending claim for UM motorist benefits against his or her own insurance carrier. See *Carter v. Progressive Mountain Ins.*, 295 Ga. 487, 489 (761 SE2d 261) (2014); *Wade v. Allstate Fire & Cas. Co.*, 324 Ga. App. 491, 495 (751 SE2d 153) (2013). A claimant who executes a general release of the tortfeasor cannot recover UM benefits, because UM claims "are derivative in nature, requiring the injured party to establish the legal liability of the uninsured or underinsured motorist, which he [or she] cannot do if he [or she] has released that motorist from liability." *Moon v. Mercury Ins. Co. of Ga.*, 253 Ga. App. 506, 507 (1) (559 SE2d 532) (2002) (citation omitted). See *Rodgers v. St. Paul Fire & Marine Ins. Co.*, 228 Ga. App. 499, 500 (1) (492 SE2d 268) (1997). Because Jenna Newstrom executed a general release of her claims against the other driver in the accident,

6

Owners was entitled to a declaration that the Newstroms cannot recover under the policy.

*Judgment affirmed. Branch and Bethel, JJ., concur*.